Ross, District Judge.
This is an action by the United States to enforce an alleged forfeiture of certain merchandise on the ground that it was transported from one port of the United States to another port therein, in foreign bottoms. The answer of the owner of the property proceeded against admits the bringing of it into the port of Redondo, in this judicial district, as alleged in the libel, and sets up as a defense that the merchandise was wholly of the produce and manufacture of the United States, and was shipped from New York in the Belgian ship Waesland, consigned to a commercial house at Antwerp; that it was there discharged and landed; that subsequently it was shipped on the British ship Kirkcudbrightshire, consigned to the respondent at San Francisco, Cal., and brought to San Francisco, where it was entered as a manufacture of the United States, which had been exported and returned to this country; that, prior to the departure of the ship Waesland from the port of New York, the respondent procured from the collector of customs and naval officer at that port a certificate of the exportation of the merchandise from that port, and that the consignees thereof at Antwerp, prior to the departure of the ship Kirkcudbrightshire, procured from the consul of the United States at that port a certificate that the said merchandise, bound by the said ship Kirkcudbrightshire to the port of Redondo, consisted of articles of the manufacture of the United States which had not been advanced in value or improved in condition by any process of manufacture or other means. The answer further avers that, at the time the merchandise in question was shipped from New York, the respondent intended to export the same to a foreign country, and thereafter to cause the same to be returned to the United States; that the merchandise was at all times the manufacture of the United States; and that it was, by the respondent and his agents, returned to the United States after having been exported, without having been advanced in value or improved in condition by any process of man *232 ufacture or other means. ’ The sufficiency of the defense thus set up is challenged by exceptions thereto filed on the part of the government. The libel is based on section 4347 of the Revised Statutes, which reads as follows:
“No merchandise shall be imported, {transported,] under penalty of forfeiture thereof, from one port of the United ¡-tates to another port of the United States, in a vessel belonging wholly or in part to a subject of any foreign power; but this section shall not be construed to prohibit the sailing of any foreign vessel from one to another port of the United States, provided no merchandise other than that imported in such vessel from such foreign port, and which shall not have been unladen, shall be carried from one port or place to another in the United States. * * * ”
This section is a re-enactment of the fourth section of the act of March 1, 1817, (3 St. at Large, p. 351,) entitled “An act concerning the navigation of the United States.” It was manifestly passed in the interests of American shipping, and to prevent foreign vessels from engaging in domestic commerce. In 1817, when the statute was first enacted, the coasting trade of the United States was comparatively small, and was confined to the Atlantic coast. In the course of time, however, it assumed larger proportions, and it became an easy thing for foreign vessels to take a cargo from the United States-, touch and discharge at a Canadian port, then reload, and proceed to an American port, or, without herself proceeding, forward the cargo by another foreign vessel. To prevent this from being done, congress, by section 20 of the act of July 18, 1866, (14 St. at Large, p. 182,) enacted that—
“If any goods, wares, or merchandise shall at any port or place in theUnited States, on the northern, northeastern, or northwestern frontiers thereof, be laden upon any vessel belonging wholly or in part to a subject or subjects of a foreign country or countries, and shall be taken thence to a foreign port or place to be reladen and reshipped to any other port or place in the United States on said frontiers, either by the same or any other vessel, foreign or American, with intent to evade the provisions of the fourth section of the ‘Act concerning the navigation of the United States,’approved March 1, 1817, the said goods, wares, and merchandise shall, on their arrival at such last-named port or place, be seized and forfeited to the United States, and the vessel shall pay a tonnage charge of fifty cents per ton on her admeasurement. ”
Section 4 of the act of March 1, 1817, was carried into the Revised Statutes as section 4347, and section 20 of the act of July 18, 1866, was therein embodied, in substance, as section 3110. These sections are in pari materia, and must be read together. It is entirely clear that congress thought that section 4347 could be evaded by the mode of shipment described in section 3110, and, to prevent such evasion on the northern, northeastern, and northwestern frontiers, enacted the latter section, and attached the consequences of the offenses therein defined, not only to the merchandise, but to the ship as well. If the act proscribed by section 3110 was the same as that prohibited by section 4347, it is difficult to see the necessity of enacting section 3110 at all, or any reason for inflicting a penalty on the ship in the one case, and allowing it to go unpunished in a precisely similar case. Congress evidently recognized that section 4347 could be evaded by so directing the voyage *233 that it would not be from one port of the United States to another port of the United States, and that the prevention sought could not be attained by existing legislation. It consequently made it an offense to evade the provisions of section 4347, under the circumstances set forth in section 3110. As congress thus made the evasion of the provisions of section 4347 an offense under certain defined conditions, the courts cannot say that any other conditions than those thus defined constitute an offense, without departing from the manifest intent of the statute, and usurping the powers of the legislative department of the government. The act of the respondent in the present case was a palpable evasion of the provisions of section 4347 of the Revised Statutes, but it was not the act thereby prohibited. Nor was there any concealment about the transaction, for the respondentdisclosed to the collector of customs all that he had done, producing before him the certificates showing that he had shipped the goods from- New York to Antwerp, and then back to the United States. If such evasions as are here shown should be prohibited, it is for congress to prohibit them. It is not for the courts to make the law, or to depart from the intention of the lawmaking power, as manifested by is enactments. Merrit v. Welsh, 104 U. S. 694; U. S. v. Breed, I Sumt 160. Exceptions overruled.